## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **JAMES C. FRAZIER,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **CASE NO. CV 07-B-118-S** |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **Commissioner, Social Security** } | |
| **Administration,** } | |
| } | |
| **Defendant.** } | |

### MEMORANDUM OPINION

Plaintiff James C. Frazier ("Frazier") brings this action pursuant to sections 205 and 1631(c) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of the decision by the Commissioner of Social Security ("Commissioner"), which denied Frazier's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Act. Upon review of the record, the submissions of the parties, and the relevant law, this court is of the opinion that the ALJ's decision denying benefits is due to be affirmed.

### I. PROCEDURAL HISTORY

Frazier filed applications for DIB and SSI on May 7, 2003, with a protective filing date of April 3, 2003, and an alleged disability onset date of November 30, 2002. (R. at

65, 71.)[1]  Upon denial of his applications, (R. at 56), Frazier timely requested a hearing

before an administrative law judge ("ALJ").  (R. at 63.)  The hearing took place on

December 9, 2004, with Frazier represented by counsel, and in which Frazier, Frazier's

sister, and a vocational expert ("VE") testified.  (R. at 223–262.)  On August 1, 2005, the

ALJ issued a decision denying Frazier's claim for benefits.  (R. at 35.)  Because the

Appeals Council subsequently denied Frazier's request for review, (R. at 5), the ALJ's

decision became the final decision of the Commissioner.  Having exhausted all

administrative appeals, Frazier timely instituted the present action against the

Commissioner on January 16, 2007, seeking review of the Commissioner's final decision.

(Doc. 1.)[2]

 Separately from this action, Frazier filed a new application for SSI on July 19,

2006, for which Frazier was not represented by counsel.[3]  (Doc. 7 at 2.)  Based on this

second application, Frazier was found disabled, so he has received SSI benefits from July

2006 onwards.  (*Id.*)  The present action, then, is limited to a review of Frazier's first

application and to the question of whether Frazier was disabled and entitled to DIB and

---

[1] The reference format, ["R. at ___"], refers to page numbers as they appear in the certified copy of the transcript of the administrative record, filed with the court by the Commissioner in accordance with 42 U.S.C. § 405(g).

[2] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's case docket.

[3] Frazier did not file a new application for DIB at this time because he was ineligible for DIB as of December 31, 2004, when his insured status, which was based on his earnings record, expired.

2

SSI benefits from his alleged disability onset date, through the date of the ALJ's decision.

## II.  STANDARD OF REVIEW

This court's role in reviewing claims brought under the Act is a narrow one, limited to determining 1) whether there is substantial evidence in the record to support the Commissioner's decision, and 2) whether the Commissioner based his decision upon proper legal standards.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also* 42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  It is "more than a mere scintilla, but less than a preponderance." *Id.*

This limited scope of review does not render affirmance automatic; on the contrary, "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of decision reached." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988) (internal quotations omitted).  While the court may not substitute its judgment for that of the Commissioner by deciding facts anew, reweighing evidence, or making credibility determinations, *see Bloodsworth*, 703 F.2d at 1239, 1242, the court must review *de novo* the Commissioner's conclusions of law, *see Moore*, 405 F.3d at 1211; *Passopulos v. Sullivan*, 976 F.2d 642, 645 (11th Cir. 1992).

The burden is on the claimant to prove disability.  *Kirkland v. Weinberger*, 480

F.2d 46, 48 (5th Cir. 1973), *cert. denied,* 414 U.S. 913 (1973).  The claimant's "burden is a heavy one, so stringent that it has been described as bordering on the unrealistic." *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981).  Even if the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth*, 703 F.2d at 1239.

### III. FACTUAL SUMMARY

Frazier was forty-four years old at the time of the hearing before the ALJ.  (R. at 225.)  He has a tenth grade education and a long work history in the construction field.  In particular, Frazier has worked as a general laborer laying pipe and ceramic tile, as well as installing sheet rock, and he has also worked in waste disposal.  (R. at 75, 91–95, 226–28.)  In exchange for rent, he has performed repairs and maintenance for many years for the manager of the trailer park in which he lives.  (R. at 176, 239–40.)  Frazier last worked on November 30, 2002, the same date as his alleged disability onset, quitting his job because he "wasn't making enough money."  (R. at 71, 75.)

**A.    Frazier's Alleged Impairments**

All of Frazier's handwritten information on the disability forms was provided by his sister, an employee of the Social Security Administration, because, as his sister wrote, Frazier could not fill out his own papers.  (R. at 104, 240.)  Frazier contends that he is disabled from a mental condition related to anxiety, as well as from wrist and knee pain.

4

(R. at 74.)  In his testimony at the hearing before the ALJ, but not in his earlier

application documents, Frazier stated that he hears voices in his head that make him angry

and more inclined to engage in destructive acts.  (R. at 235–36.)  According to Frazier, his

mental condition limits his ability to work because he cannot remember things, he easily

becomes nervous, and he "get[s] fed up" when he becomes nervous and quits his jobs as a

result.  (*Id.*)  He explains that his tendency to get angry makes it difficult for him to get

along with others, since he often becomes violent, and he also claims that his body does

not "hold out" to work.  (R. at 102–03.)  Currently, he maintains that he spends most of

his day lying down because he is too depressed and in too much pain to do anything else.

(R. at 100, 232.)

        Frazier admits that he drinks heavily, about six to eight beers daily, but he

characterizes his alcohol use as self-medication for his pain.  (R. at 117–18, 233–34.)  He

was in a alcohol treatment center once, about ten years before his disability application.

(R. at 118, 237.)  When Frazier was asked by the ALJ whether he still heard voices even

during his sober periods, such as his time in the treatment center, Frazier responded that

he did, and that alcohol had no effect on his mental condition.  (R. at 238.)

        Frazier's sister, in her testimony before the ALJ, provided greater detail about

Frazier's work and mental health history.  She indicated that at least some of Frazier's

jobs were obtained and retained only because of Frazier's sister's husband, and that she

believed Frazier would have been fired for his outbursts if his jobs had not been

protected.  (R. at 241–42.)  In fact, Frazier's sister stated that whenever Frazier had lost

jobs in the past, it was due to his bad temper.  (R. at 248.)  Frazier's sister claimed that

Frazier had been hearing voices all of his life, and that the voices sometimes only narrated

his actions but at other times directed him to take violent actions against others.  (R. at

244–45.)  She also corroborated Frazier's contention that the voices were unrelated to his

heavy alcohol use.  (R. at 245.)

Frazier's sister testified that Frazier had previously been in prison for arson for

attempting to burn down his mother and father's former home, which his other sister had

been renting out at the time, and that Frazier had been arrested on several other occasions

for harassment.  (R. at 245, 249.)  She further testified that Frazier had threatened

violence against his friends and arson against the manager of his trailer home, (R. at 246),

the latter of which is corroborated by a letter from the manager explaining that Frazier

had broken two windows in her office and was found walking around her office with a

torch in response to an eviction letter she had sent to him, (R. at 127).  Finally, Frazier's

sister remarked that Frazier was violent towards himself as well; for example, she stated

that Frazier and his friends would sometimes shock themselves with bare electric wires.

(R. at 246.)

Frazier's sister informed the ALJ that, at the time of the hearing, Frazier was

awaiting evaluation by a probate court.  (R. at 254.)  According to Frazier's brief in this

action, Frazier was, in fact, committed in February 2005 to a mental health facility

following a probate court proceeding, and he was at some point transferred to another facility where he continued to receive treatment "into March 2006[,] as reported to counsel by Plaintiff's sister." (Doc. 7 at 5.) Frazier's counsel attests that he "was unable to procure the appropriate releases but believes [the commitment treatment records] may have been part of the record in a subsequent application in which this counsel was not asked to represent and in which Plaintiff has established disability." (*Id.*) Notably, in a letter that Frazier's counsel submitted to the Appeals Council in February 2006, Frazier's counsel made no mention of Frazier's year-long commitment and post-hearing treatment, much less alluded to any corroborating evidence. (R at 212–16.) Instead, that letter merely contended that the evidence already in the record supported a finding of disability because of Frazier's knee pain and mental illness. (R. at 216.)

**B.      Frazier's Medical Records**

Frazier's medical records date from the summer of 1997, when he was first diagnosed with extensive knee damage and a torn anterior cruciate ligament ("ACL"), (R. at 162), to May 2006, almost a year after the ALJ had issued the decision denying benefits, (R. at 220). Besides his knee injuries, for which Frazier's doctor recommended surgery, (R. at 162), the only additional physical impairments described in Frazier's records are minor injuries sustained during a motor vehicle accident in October 1997 and a head laceration he received when hit with a stick in February 2003, (R. at 169–74). There are no treatment records for any wrist injury, except for a remark written in the

consulting psychologist's report on June 25, 2003, noting that Frazier claimed to have fallen and broken his wrist, and a pain diagram in a questionnaire from November 18, 2004, when Frazier had sought outpatient psychiatric treatment at Cooper Green Hospital, marking Frazier's left wrist as a source of pain.  (R. at 176, 180, 184.)

In addition to the psychological consultative examination ("CE"), performed in June 2003, there are two other sets of treating medical records commenting on Frazier's mental instability: his October 2004 emergency room treatment following his threatened arson of the trailer park manager's office, and his November 2004 outpatient treatment at Cooper Green Hospital.  During his emergency room treatment, Frazier stated that he had been hearing voices for two days beforehand and had a history of hearing voices, and he also asked for alcohol detoxification.  (R. at 193.)  A psychiatric evaluation was performed, which diagnosed Frazier with substance abuse and psychosis not otherwise specified and which indicated that Frazier had an antisocial personality disorder.  (R. at 189, 194.)  Frazier was found, however, to be no danger to others and stable enough for discharge.  (R. at 194.)  Because of his history of alcohol dependence, Frazier was given referrals to outpatient detoxification programs.  (*Id.*)  When Frazier did seek outpatient treatment the following month for a psychiatric evaluation, explaining that he had an upcoming "social security hearing," Frazier appears to have been diagnosed with stress anxiety, mild depression, alcohol abuse, and liver problems, though no clear diagnostic findings were provided in this hospital record.  (R. at 184.)

8

The CE, which included an interview with Frazier as well as a friend who had accompanied Frazier to the exam, found Frazier's "abstraction . . . inadequate" and reported Frazier's friend's comments that Frazier had an impaired memory as well as cognitive difficulties.  (R. at 176.)  The consulting psychologist specifically found that Frazier "[did] not give convincing evidence of actual hallucinations or delusions."  (*Id.*)  With respect to Frazier's ability to work, the consulting psychologist stated that Frazier appeared at least marginally able to function independently, that he appeared able to understand, carry out, and remember instructions, and that he appeared able to deal with supervision, coworkers, and work pressures, except for the fact that he quits jobs when he gets angry. (R. at 176–77.)  The CE concluded with the following diagnostic impression: Axis I, no diagnosis; Axis II, personality disorder not otherwise specified; and Axis III, multiple physical complaints without documented history.  (R. at 177.)  At the hearing before the ALJ, Frazier's counsel objected to the content and level of detail of this CE and asked to submit a new CE within thirty days; although the ALJ left the record open for an additional six months, Frazier never submitted a new CE.  (R. at 23, 254.)

Based on the CE and Frazier's other medical records, a reviewing psychologist completed a Psychiatric Review Technique Form ("PRTF"), a form that is used to assess a claimant's medical disposition and to categorize the claimant's mental disorders.  (R. at 128.)  On the PRTF, the psychologist classified Frazier's mental impairments as personality disorder and substance addiction disorder, but noted that a residual functional

9

capacity ("RFC") assessment would be necessary to determine Frazier's medical disposition.  (*Id.*)  Under the listed personality disorder traits, the psychologist checked the boxes assessing Frazier with "pathologically inappropriate suspiciousness or hostility" and "intense and unstable interpersonal relationships and impulsive and damaging behavior."  (R. at 135.)  His substance addiction disorder was qualified as relating to alcohol abuse.  (R. at 136.)  Considering all of Frazier's mental impairments together, this reviewing psychologist found that Frazier had only moderate, and not marked or extreme, restrictions of the activities of daily living and difficulties in maintaining social functioning and concentration.  (R. at 138.)

Frazier's mental RFC assessment, completed by the same reviewing psychologist, found one "markedly limited" mental activity, his ability to interact appropriately with the general public, and found Frazier "moderately limited" in areas relating to sustained concentration and persistence, social interaction, and adaptation.  (R. at 142–43.)  This psychologist concluded that although Frazier would have difficulty with complex instructions and would show some "irritable distractibility" if asked to work in close proximity with many others, he could work an eight-hour day, only missing a day of routine duties a month due to his mental impairments.  (R. at 144.)

Frazier's final medical record, from May 2006, diagnosed him with alcoholic cirrhosis.[4]  (R. at 219–20.)  This new medical evidence was submitted by Frazier's

_____

[4] Cirrhosis is the "widespread disruption of normal liver structure by fibrosis and the formation of regenerative nodules that is caused by any of various chronic progressive conditions

counsel in November 2006, over a year after the ALJ's decision.  (R. at 218.)  Although the evidence was incorporated into Frazier's record by an order of the Appeals Council, (R. at 4), and was explicitly considered by the Appeals Council in deciding whether to grant review of the ALJ's decision, (R. at 5), the Appeals Council nevertheless denied Frazier's request for review, (*id.*)

### C.    Testimony of the VE

At the administrative hearing, the VE provided the classifications for Frazier's past relevant work from the *Dictionary of Occupational Titles* ("DOT"), although the VE expressed concern that Frazier's own description of his jobs, particularly as a sheet rock installer, did not precisely match the descriptions in the DOT.  (R. at 255–57.)  The VE testified that Frazier's previous jobs in waste disposal and construction, as described, were heavy labor and that his job as a sheet rock installer was very heavy and unskilled, or at best semiskilled, labor, even though the DOT would have classified a job with the same title as medium and skilled.  (R. at 255–56.)

The VE also answered several hypothetical questions posed by both the ALJ and Frazier's counsel.  The ALJ initially asked whether, assuming that Frazier was at least able to perform light and sedentary work from an exertional standpoint and was "moderately limited" in all of the areas labeled as such in Frazier's mental RFC assessment, there would be any light or sedentary jobs available in the national economy

---

affecting the liver."  *See* Merriam Webster's Medical Dictionary Online, *available at* http://medical.merriam-webster.com.

that Frazier could perform.  (R. at 259–60.)  The VE responded that with the limitations

posed by the hypothetical, Frazier could not return to his past relevant work, but that there

would be "a multitude" of unskilled light and sedentary jobs available, such as those in

food preparation, transportation equipment cleaning, and product assembly.  (R. at 260.)

The ALJ then asked how the presence of moderate pain would affect Frazier's ability to

do those jobs.  (*Id.*)  The VE replied that moderate pain would not have any effect, since

only pain that reaches the "moderately severe" level becomes significant in terms of an

individual's ability to focus on his work.  (*Id.*)  Finally, the ALJ inquired into the effects

of Frazier's non-exertional, or mental, impairments.  (R. at 260–61.)  The VE stated that

those impairments would be viewed similarly to pain issues and would also be

vocationally significant only at the marked or moderately severe level.  (R. at 261.)  The

one question asked of the VE by Frazier's counsel was whether, if Frazier's various

emotional problems, except for his alcohol addiction, resulted in at least a "marked"

impairment in his ability to handle normal work pressure and concentrate for a period of

more than two hours, Frazier would be able to perform any of the jobs discussed.  (R. at

261–62.)  The VE answered that such marked impairments would prevent Frazier from

doing any work.  (R. at 262.)

## IV.  DISCUSSION

### A.    Five-Step Evaluation for Eligibility for DIB and SSI

The regulations implementing the Act require the Commissioner to follow a five-

step sequence to evaluate whether a claimant is "disabled" within the meaning of the Act

and thus entitled to DIB and SSI benefits.[5]  *See* 20 C.F.R. § 404.1520(a)(4); *Jones v.*

*Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied*, 529 U.S. 1089 (2000).

First, the claimant must establish that he is not engaged in substantial gainful

activity.  *See* 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial activity" means any work that

involves doing significant physical or mental activities, while "gainful" work is any work

that is usually done for pay or profit, whether or not a profit is realized.  *See id.* at

§ 404.1572.  If the claimant is so engaged, the Commissioner will find the claimant not

disabled.  *See id.* at § 404.1520(b).

Second, the claimant must establish that he has a severe medically determinable

physical or mental impairment or combination of impairments that meets the duration

requirement.  *See id.* at §§ 404.1520(a)(4)(ii), 404.1509.  A "severe" impairment is one

that significantly limits a claimant's physical or mental ability to do basic work activities.

*See id.* at § 404.1520(c).  If the claimant does not have such an impairment or

combination of impairments that also meets the duration requirement, the Commissioner

---

[5]  The standard for assessing whether a claimant is "disabled" is the same for both DIB and SSI claims because both share a common definition of "disability," defining it as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Compare* 42 U.S.C. § 423(d) *with* § 1382c(a)(3)(A).  Although there are distinct statutory provisions and regulations regarding each type of claim, DIB and SSI, many of the provisions and regulations are identical or contain materially similar content.  Therefore, citations in this opinion to statutes, regulations, or court opinions involving one type of claim should be construed to refer to the other as well, as context requires.

will find the claimant not disabled. *See id.* at § 404.1520(a)(4)(ii).

Third, the claimant must establish that his impairment or combination of impairments meets or equals an impairment in the regulations' Listing of Impairments ("the listings"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See id.* at § 404.1520(a)(4)(iii). If the impairment or combination of impairments does meet or equal an impairment in the listings, the Commissioner must conclusively find the claimant disabled, regardless of the claimant's age, education, and work experience. *See id.* at § 404.1520(d). Otherwise, the Commissioner will proceed to the fourth step.

Fourth, the claimant must establish that his RFC[6] does not enable him to do his past relevant work.[7] *See id.* at §§ 404.1520(a)(4)(iv), 404.1520(f). If, upon comparing the claimant's RFC with the physical and mental demands of his past relevant work, the Commissioner finds that the claimant can still perform his past work, then the Commissioner will find the claimant not disabled. *See id.* at § 404.1520(f).

Fifth, and finally, the Commissioner must assess the claimant's RFC and his age, education, and work experience (*i.e.*, the claimant's vocational factors) to determine

---

[6] The regulations define RFC as "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. *Id.* at § 404.1520(e).

[7] "Past relevant work" is limited to work that the claimant has done in the past fifteen years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. *Id.* at § 404.1560(b)(1).

whether the claimant can make an adjustment to other work.[8]  *See id.* at

§§ 404.1520(a)(4)(v), 404.1520(g)(1).  Unlike with steps one through four, in which the

claimant has the burden of proof, in this step the Commissioner has the burden of

providing evidence that demonstrates that other work exists in significant numbers in the

national economy that the claimant is able to perform, given the claimant's RFC and

vocational factors.  *See id.* at §§ 404.1520(g)(1); 404.1560(c)(2); *Bowen v. Yuckert*, 482

U.S. 137, 146 n.5 (1987); *Jones*, 190 F.3d at 1228.  This burden-shift is only temporary,

however, because once the Commissioner has provided such evidence, the claimant must

then prove that he is unable to perform that other work listed by the Commissioner in

order to be found disabled.  *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir.

2001).

**B.     Decision of the ALJ**

        Applying the steps of the sequential evaluation, the ALJ first found that Frazier

had not engaged in substantial gainful activity since his alleged disability onset date.  (R.

at 28.)  The ALJ then identified the following severe impairments: alcohol abuse;

personality disorder; ACL tear of the left knee; chondromalacia;[9] and status post

---

        [8] By "other work," the regulations mean jobs that "exist in significant numbers in the
national economy" and are either in the region where the claimant lives or in several regions in
the country.  *See id.* at § 404.1560(c)(1); *see also* 42 U.S.C. § 423(d)(2)(A) (defining "work
which exists in the national economy" as "work which exists in significant numbers either in the
region where such individual lives or in several regions of the country").

        [9] Chondromalacia means an "abnormal softness of cartilage."  *See* Merriam Webster's
Medical Dictionary Online, *available at* http://medical.merriam-webster.com.

athroscopic knee surgery.  (*Id.*)  The ALJ did not, however, find that any of these impairments met or medically equaled a listed impairment.  (R. at 28–29.)  In reviewing Frazier's mental impairments, the ALJ explicitly utilized the PRTF and concluded that Frazier's alcohol abuse and personality disorder had resulted in no more than moderate restrictions and limitations in the various categories, and thus Frazier's impairments did not meet or medically equal a listed impairment.  (R. at 29.)

Before proceeding to the fourth step, the ALJ determined Frazier's RFC.  From an exertional standpoint, the ALJ found Frazier capable of performing at least light work, despite his obvious knee injuries; from a mental standpoint, the ALJ found Frazier no more than moderately limited in his ability to perform work, although the ALJ cautioned that Frazier should avoid dealing with the public.  (R. at 30, 32.)  In reaching this physical and mental RFC, the ALJ considered all of Frazier's impairments, including his allegations of pain, and specifically applied the Eleventh Circuit's "pain standard"[10] to Frazier's and Frazier's sister's subjective complaints.  (R. at 29.)  Not only did the ALJ find that the objective medical evidence did not support the severity of the symptoms claimed by Frazier and his sister, the ALJ also found that Frazier's conditions were not of

---

[10] The Eleventh Circuit has delineated "a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam); 20 C.F.R. § 404.1529.

such severity that they could reasonably be expected to give rise to his alleged symptoms. (R. at 30.)  In particular, the ALJ seemed to find incredible Frazier's assertions that he quit working in November 2002 due to physical problems, when he told the consulting psychologist otherwise and also completed a disability report indicating that he quit his job because he was not making enough money.  (*Id.*)  The ALJ further noted that Frazier had not received treatment for any chronic physical condition except for his knee, apparently discrediting Frazier's contention that he had a disabling wrist injury.  (*Id.*)

With respect to both Frazier's and Frazier's sister's testimony that Frazier heard voices inciting violence, the ALJ stated that "[t]he undersigned does not find their allegations to be supported by the medical evidence."  (*Id.*)  The primary treating medical evidence regarding Frazier's auditory hallucinations that the ALJ appears to have credited, however, is the CE; indeed, the ALJ maintained that the CE's findings regarding Frazier's limitations were entitled to "significant weight."  (R. at 32.)  The ALJ partially discredited Frazier's psychiatric evaluation during his emergency room visit in October 2004 as inconsistent with other evidence of record, noting that Frazier's neighbor had explained that he had brought Frazier to the emergency for alcohol detoxification, and not for psychiatric treatment, and that although both this evaluation and the CE diagnosed Frazier with personality disorder, the CE deemed Frazier's description of the voices he heard as unconvincing of actual hallucinations.  (R. at 31.)  The ALJ also noted that when Frazier sought outpatient treatment at Cooper Green Hospital, he did not mention hearing

17

voices as part of his reason for seeking treatment, so Frazier's treatment was likely unrelated to his alleged hallucinations.  (*Id.*)  Finally, the ALJ qualified the diagnoses of personality disorder as based on Frazier's "length history of violence and criminal behavior" and pointed out that Frazier had been able to maintain employment whenever he desired.  (*Id.*)

The ALJ largely repeated the findings of the reviewing psychologist in establishing Frazier's RFC and in deciding that Frazier could perform light or sedentary work as long as his work was limited in accordance with the restrictions set forth in the RFC assessment.  (R. at 32.)  Moreover, the ALJ concluded that Frazier's and Frazier's sister's testimony was credible "only to the extent that it is consistent with these limitations." (*Id.*)  While the ALJ acknowledged that a reviewing psychologist's opinion does not, as a general matter, merit as much weight as that of an examining or treating professional, the ALJ decided that the reviewing psychologist's opinion deserved some weight in this case because there was other evidence supporting those findings.  (*Id.*)

Based on the ALJ's determination of Frazier's RFC as well as on the testimony of the VE at the hearing, the ALJ found that Frazier was unable to return to his past relevant work.  (*Id.*)  At the final, fifth step of the disability analysis, the ALJ decided that, per the testimony of the VE, there were other jobs existing in significant numbers in the national economy to which Frazier would be able to make a successful vocational adjustment, considering Frazier's age, education, experience, and RFC.  (R. at 33.)  The ALJ

therefore concluded that Frazier was not disabled at any time through the date of the decision and was ineligible for either DIB or SSI benefits.  (*Id.*)

**C.      Frazier's Arguments for Reversal and Remand**

Frazier consolidates several different arguments in his brief under the single heading: "The ALJ's mental RFC findings are not based on substantial evidence."  (Doc. 7 at 4.)  The court separates these arguments and addresses them in turn.

**1. Whether the ALJ Improperly Rejected the Diagnoses of Frazier's Examining Sources In Determining Frazier's RFC**

Frazier asserts that the ALJ improperly rejected the diagnoses of both the CE and the emergency room psychiatric evaluation, which assessed Frazier with an antisocial personality disorder.  (Doc. 7 at 4.)  Frazier argues that the ALJ instead substituted his own judgment in concluding that Frazier was no more than moderately limited in his ability to perform the mental requirements of his work.  (*Id.* at 4–5.)  In particular, Frazier objects to the ALJ's characterization of the diagnoses as being based on Frazier's history of violence and criminal behavior, since Frazier contends that the ALJ therefore must not have considered whether this antisocial behavior was actually an effect of Frazier's mental disorder.  (*Id.* at 5.)  There is, however, no concrete evidence to support Frazier's assumptions about the ALJ's reasoning, and Frazier's argument seems to imply that simply because Frazier was diagnosed as suffering from a personality disorder, the ALJ could not, under any circumstances, have found Frazier capable of the mental RFC of performing light or sedentary work.

19

Medical opinions and diagnoses are just one type of evidence that an ALJ is required to consider in evaluating a claim for disability.  Opinions from an examining medical source are generally given more weight than those from a non-examining, or reviewing, source.  *See* 20 C.F.R. § 404.1527(d)(1).  The opinion of an treating source, on the other hand, must be given substantial or considerable weight unless there is "good cause" to the contrary.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists if: 1) the treating source's opinion is not bolstered by the evidence; 2) the evidence supports a contrary finding; or 3) the opinion is conclusory or inconsistent with the source's own medical records.  *See id.*  The ALJ is permitted to give less weight to the opinion of a treating source than to other evidence, but the ALJ must clearly articulate the reasons for doing so.  *See id.*; *Good v. Astrue*, 240 Fed. Appx. 399, 403 (11th Cir. 2007) (per curiam).  The weight that an ALJ accords a medical source's opinion is based on a number of factors, including the relationship of the medical source with the claimant, the evidence used to support the source's opinion, how consistent the opinion is with the record as a whole, and the speciality of the medical source.  *See* 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ explicitly acknowledged in the decision that an ALJ is required to consider all opinions of medical sources, and the ALJ also correctly noted that the ultimate issue of determining disability is one reserved to the ALJ.  In addition, as the Commissioner argues, it appears that the ALJ did, in fact, accord significant weight to the

diagnoses of antisocial personality disorder, but merely decided that the disorder did not impair Frazier's mental RFC so substantially as to prevent him from performing all work. (Doc. 8 at 7–8.)  Indeed, the ALJ labeled Frazier's personality disorder as a "severe impairment" and accepted that Frazier had some limitations due to this impairment.  Far from rejecting or ignoring the diagnoses, then, the ALJ affirmed the diagnoses but found that when Frazier's personality disorder was considered in terms of his RFC, the impairment as described by both Frazier and the psychologists did not result in more than a moderately limited mental capacity, with a greater limitation only in dealing with the public.  As a result, the ALJ properly concluded that Frazier could still meet the demands of light or sedentary work, with some limitation to avoid interaction with the public, all while giving significant weight to the medical sources' diagnoses.

Furthermore, even if the ALJ did give the personality disorder diagnoses less weight than other evidence, the ALJ was justified in doing so because the ALJ had ample "good cause" for finding these opinions less compelling or credible than the other evidence.  Although only one of the diagnoses at issue, Frazier's emergency room psychiatric evaluation, came from a source that is arguably "treating," rather than "examining," and thus subject to the good cause analysis, the ALJ's decision provides good cause for devaluing the CE's diagnosis as well.

First, the ALJ demonstrated that both of the diagnoses, or at least the severity Frazier attaches to them, were not bolstered by the evidence of record, since the ALJ

expressly noted that Frazier was able to maintain continued employment in spite of any personality problems.  Second, the ALJ pointed out that the only medical source that renders specific conclusions about the credibility of Frazier's hallucinations, Frazier's CE, supports a finding contradictory to a severely limiting personality disorder since the consulting psychologist opined that Frazier's evidence of actual hallucinations was unconvincing.  Finally, the diagnosis made during Frazier's emergency room treatment was clearly conclusory, since it did not provide any detailed findings but instead discussed Frazier's stable condition and lack of danger to others, as well as the stated reason for his visit, which was alcohol detoxification.  The diagnosis from the CE, on the other hand, is accompanied by specific findings, but attributing great weight or severity to the diagnosis would be inconsistent with the other evidence in the CE report that Frazier exhibited generally normal thought processes, thought content, affect, and mood.  While there is no question that the ALJ agreed that Frazier suffered from some kind of personality disorder, as diagnosed by two medical sources, the ALJ had good cause to give little weight to any indication of a severely limiting disorder.  In any event, none of Frazier's medical evidence even claimed that Frazier had a severely limiting disorder that might impair his RFC and ability to work, so the ALJ applied the proper legal standards in giving due consideration to the personality disorder diagnoses and had substantial evidence to conclude that the disorder did not result in a disability within the meaning of the Act.

**2. Whether the ALJ's RFC Findings Were Improperly Based on an Outdated CE**

Frazier argues that the ALJ's RFC findings were not based on substantial evidence because the ALJ relied on a CE that was conducted in June 2003, a year-and-a-half before the hearing and over two years before the ALJ issued a decision, as well as prior to any other medical evidence in the record diagnosing Frazier with a mental disorder.  (Doc. 7 at 5.)  Frazier contends that because his counsel was not able to obtain a new CE before the ALJ closed the record in June 2005, six months after the hearing, the ALJ erred in not obtaining a new CE.

As a general matter, the claimant has the burden of furnishing medical and other evidence that proves his disability.  *See* 20 C.F.R. §§ 404.1512(a)–(c); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.").  With respect to CEs, an ALJ does not have to order or even consider CEs, "as long as the record contains sufficient evidence for the [ALJ] to make an informed decision."  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty*, 245 F.3d at 1281); *see also Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (recognizing that an ALJ "has broad latitude in ordering a consultative examination") (internal quotations omitted).  With respect to mental impairments, specifically, two recent unpublished cases from the Eleventh Circuit held that ALJs did not err in failing to order CEs for claimants who only had vague or

23

sporadic complaints of mental illness.  *See Sneed v. Barnhart*, 214 Fed. Appx. 883, 886 (11th Cir. 2006); *Street v. Barnhart*, 133 Fed. Appx. 621, 630 (11th Cir. 2005).

While there was indeed a two-year gap between Frazier's psychological CE and the ALJ's decision, the ALJ did not have a duty to obtain or consider any CE before rendering a decision, and therefore the ALJ certainly did not have a duty to obtain a second, and more recent, CE simply because the first CE was two years old.  Even if the ALJ was compelled to obtain and consider a CE because of Frazier's complaints of mental illness, the ALJ clearly did so in reviewing the June 2003 CE.  Frazier has not provided, and the court has not found, any case law that requires the ALJ to obtain a CE that is close in time to the ALJ's decision.  Moreover, as Frazier himself points out, the CE that does exist precedes all other evidence of record regarding Frazier's mental impairment; as a result, the ALJ did not simply consider a two-year-old CE alone but considered it in connection with this subsequent evidence that, to a large extent, came to the same conclusions as the CE.  Thus, the ALJ did not err in relying upon a CE dated two years before the ALJ's decision, and the ALJ had substantial evidence, from the CE as well as from other records, to support the finding that Frazier was not disabled.

### 3. Whether the Case Should Be Remanded for the Taking of Additional Evidence

Frazier speculates that there were records of mental health treatment submitted with Frazier's second disability application that would be new and material evidence for this first application, especially since Frazier was apparently committed to an institution

in February 2005, six months before the ALJ issued the decision that became the final

decision of the Commissioner.  (Doc. 7 at 5–6.)  Frazier argues that because his counsel

did not have access to any evidence submitted with Frazier's second application, when

Frazier was unrepresented, the decision on his first application should now be remanded

under sentence six of 42 U.S.C. § 405(g)[11] to obtain the allegedly new and material

evidence.

A sentence six remand is available "when evidence not presented to the

Commissioner at any stage of the administrative process requires further review."

*Ingram*, 496 F.3d at 1267.  To obtain such a remand, a claimant must show that 1) the

evidence is new and noncumulative, 2) the evidence is material, such that there is a

reasonable possibility that the new evidence would change the administrative result, and

3) good cause exists for the claimant's failure to submit the evidence at the appropriate

---

[11] Frazier's brief seeks remand for this evidence under "the Fourth Sentence," (doc. 7 at 6), but it is sentence six, not sentence four, of section 405(g) that relates to new evidence. Sentence six, in relevant part, provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).

administrative level.  *See* 42 U.S.C. § 405(g); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998), *cert. denied*, 525 U.S. 1124 (1999).  Any new evidence submitted must pre-date the final decision of the Commissioner, which typically is the ALJ's decision, *see, e.g.*, *Jackson v. Apfel*, 162 F.3d 533, 539 (8th Cir. 1998), although the Eleventh Circuit has recently clarified that a decision by the Appeals Council denying review can also be a reviewable final decision, *see Ingram*, 496 F.3d at 1266.  Moreover, the fact that new evidence was available at the time of the Appeals Council review but was not submitted to it, without any indication that the claimant was unaware of the proper submission procedures, negates any potential showing of good cause.  *See Waite v. Bowen*, 819 F.2d 1356, 1361–62 (7th Cir. 1987).  While the court has found little precedent for a situation in which allegedly new and material evidence is not actually submitted to the court upon seeking a sentence six remand, but is only speculated to exist by the claimant, one case suggests that the court should not remand a case to obtain missing evidence unless there is reason to believe that the new evidence would undermine the remainder of the evidence and change a finding that the ALJ's decision was supported by substantial evidence.  *See Parker v. Callahan*, 31 F. Supp. 2d 74, 78 (D. Conn. 1998).

Even assuming the truth of Frazier's allegations, that there is evidence pre-dating the ALJ's decision that was not before the Commissioner at either the ALJ or the Appeals Council level, Frazier has failed to demonstrate that the case should now be remanded to collect and review this evidence.  Most significantly, because Frazier's counsel has been

26

unable to procure any evidence of Frazier's commitment or treatment at mental health facilities, suggesting that either Frazier has not assisted his counsel in obtaining these records or that the facilities will not give them to Frazier or his counsel, the court cannot conclude that this evidence is indeed new and material.  As a separate matter, it is not even clear that Frazier or his counsel could ever obtain this evidence, if they have failed to do so in the past, since Frazier's brief asserts no change in circumstances that would now allow access to this evidence.  Next, while Frazier's contention that he is unable to submit the evidence due to the lack of the necessary releases might establish good cause if it were clear that such failure was related to an event out of Frazier's control, Frazier's brief does not make any effort to describe the precise reasons that Frazier could not obtain the releases but instead requires the court to make an assumption of good cause from the brief's assertions that Frazier was committed to an unnamed facility and thus "unavailable" as of February 2005, and then "subsequently referred to Eastside Mental Health" until March 2006.  Notably, if Frazier's commitment and treatment ceased in March 2006, as the brief seems to suggest, it is likely that any hindrance to obtaining Frazier's records would have disappeared, and Frazier could at least have submitted the records to the Appeals Council before its November 2006 denial of review, as Frazier did with his cirrhosis record.  In addition, the court finds suspiciously absent any mention of this purported new evidence in Frazier's counsel's letter to the Appeals Council in November 2006.  Since the burden is on Frazier to show that the evidence is new and

material, and that he had good cause for his failure to submit the evidence earlier, Frazier has not met this burden by merely speculating about what Frazier's commitment records might contain and without a clear account of why the records were so impossible to obtain sooner.

The court further finds that the alleged missing evidence, as described in Frazier's brief, would not undermine the remainder of the evidence supporting the ALJ's conclusion that Frazier does have a severe mental impairment but not one that prevents him from performing any substantial gainful activity.  While the court appreciates Frazier's dilemma, that he cannot obtain the records he thinks will undermine the rest of the evidence unless the court remands the case and allows him to continue searching for those records, the court cannot justify a remand solely on the basis that it is possible some record exists that demonstrates Frazier's personality disorder is severe enough to constitute a disability.  Even if such a record were found, the ALJ still had substantial other evidence from the CE, from Frazier's psychiatric evaluation during his emergency treatment, and from the portions of Frazier's and Frazier's sister's testimony that the ALJ found credible, to reach the decision made.  At some point, the court must conclude that Frazier has had enough time to seek and present additional evidence, or alternatively to make concrete assertions that such evidence exists but cannot be obtained for good cause, and to close the record if nothing new surfaces.  Thus, the court finds Frazier's speculations about new evidence insufficient to warrant a sentence six remand.

28

### 4. Whether the ALJ Gave Proper Weight to the Reviewing Physician's Opinions

Frazier briefly notes that the ALJ gave significant weight to the CE but used the non-examining, reviewing psychologist's opinions in the hypotheticals to the VE and in the decision's ultimate findings, suggesting that the weight the ALJ gave to the reviewing psychologist's opinions was somehow improper. (Doc. 7 at 5.) Frazier's account ignores the fact that the ALJ admitted in the decision that the reviewing psychologist's opinions were only accorded some significance because they were consistent with the other examining and treating evidence the ALJ credited in the record, including the CE. Moreover, the findings to which Frazier refers regarded Frazier's RFC and vocational limitations, assessments that only the reviewing psychologist performed in detail, and thus assessments to which the ALJ naturally cited when discussing these elements. In any event, the ALJ did not blindly follow the reviewing psychologist's opinions in reaching the final decision; instead, the ALJ discussed all the evidence in the record at length and had substantial evidence to support the finding that Frazier was not disabled.

### D. Other Arguments for Reversal or Remand

The following "issues" were mentioned at the top of Frazier's brief but were never argued or explained in any way. Nevertheless, the court evaluates whether they require reversal or remand.

### 1. Whether the ALJ Erred in the Credibility Findings

The ALJ found that Frazier's and his sister's testimony about Frazier's

impairments and their effect on his ability to work was credible only to a limited extent. While it is perfectly appropriate for an ALJ to reject a claimant's or another witness's testimony on credibility grounds, the ALJ must explicitly state the reasons for such a rejection. *Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984).  Once the ALJ determines the credibility of witnesses and resolves any conflicting statements, it is not for the court to reach an alternative conclusion unless the ALJ's decision is based on a lack of substantial evidence. *See Bloodsworth*, 703 F.2d at 1242.

In the ALJ's decision, the ALJ articulated specific contradictory evidence to the testimony that Frazier heard voices; namely, the ALJ cited to the CE that found Frazier's evidence of hallucinations "unconvincing."  The ALJ also questioned Frazier's alleged inability to work because of these voices, given that Frazier had apparently continued working despite the disorder and did not cease working in November 2002 specifically because of any mental impairment.  The Eleventh Circuit has approved of credibility determinations where an ALJ articulates "in detail" the contrary evidence constituting his reasons for discrediting a claimant's allegations, *see Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11 Cir. 2002) (per curiam), and here, the ALJ clearly provided sufficient detail to reject both Frazier's and his sister's testimony.  Because the ALJ properly discredited this testimony and also had substantial other evidence supporting the disability decision, the ALJ did not commit any error in issuing credibility findings.

## 2. Whether the ALJ Failed to Fully Develop the Record

The ALJ has a duty to develop a full and fair record of the relevant facts because

30

the administrative hearing is not an adversarial proceeding.  *See Nyberg v. Commissioner of Social Security*, 179 Fed. Appx. 589, 590 (11th Cir. 2006); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  This obligation applies even when, as in this case, the claimant is represented by counsel.  *See Zaldivar v. Apfel*, 81 F. Supp. 2d 1353, 1359 (N.D. Ga. 2000) (citing *Cowart*, 662 F.2d at 735).  It does not, however, relieve the claimant of the burden of producing evidence to support his or her disability claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 20 C.F.R. § 416.912(c) (2007).  In the event that the ALJ does not fully and fairly develop the record, the claimant may only obtain a remand of the ALJ's decision when "the record reveals evidentiary gaps which result in unfairness or clear prejudice."  *See Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (internal quotations omitted).

The SSA regulations implement the obligation to develop the record by requiring the ALJ to develop a claimant's complete medical history for at least the twelve months preceding the month in which the SSI application is filed.  *See* 20 C.F.R. § 404.1512(d).  To this end, the ALJ will make "every reasonable effort"[12] to help the claimant obtain medical reports from his or her own medical sources.  *See id.*

The ALJ did not fail to fully and fairly develop the record since Frazier does not contend that there were records from the twelve months preceding his alleged disability

---

[12] By "every reasonable effort," the regulations mean that the Commissioner will make an initial request for evidence from the claimant's medical source and will make a follow-up request, if necessary, between ten and twenty calendar days after the initial request.  *See* 20 C.F.R. § 404.1512(d).

onset, that is, from November 2001 to November 2002, that the ALJ did not obtain. Instead, Frazier only argues that the ALJ should have obtained a new CE and that the court should now remand the case to allow Frazier to obtain speculative records about Frazier's commitment, which supposedly occurred years after Frazier's alleged disability onset.  As discussed above, neither of these arguments has merit, and thus neither reveals an evidentiary gap that results in unfairness or clear prejudice.

## V.  CONCLUSION

Upon consideration of the record as a whole, the memoranda of the parties, and the decision of the Commissioner, this court finds that the Commissioner's decision denying both DIB and SSI benefits is due to be affirmed.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.


**DONE** this 17th day of March, 2008.


*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE